[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband commenced this action for a dissolution of the parties marriage on the grounds of irretrievable breakdown by complaint returnable May 9, 1995 to this court. He also sought equitable distribution of all of the assets and liabilities of the marriage, and other relief.
On May 4, 1995, the defendant wife filed an "Answer and Cross Complaint" seeking dissolution of the marriage, an equitable division of the parties property, transfer of the plaintiff's interest in real estate, alimony and other relief. While the defendant wife did not request restoration of her birth name in her request for relief, at trial that request for relief was made. CT Page 3278
The parties were represented throughout the proceedings by counsel. At trial, both parties testified and submitted financial affidavits and counsel for both parties submitted proposed orders. A number of documentary materials, including tax returns, were introduced into evidence. The plaintiff also called the defendant, his father and a former co-worker to testify.
From the evidence presented, the court finds as follows:
The couple were married on August 8, 1987 in the Town of Ellington, Ct. This was the second marriage for each party both of their first marriages having ended in divorce. The husband resided continuously in this state for one year before the filing date of the complaint. There were no minor children of this marriage, and no children were born to the wife since the date of this marriage. Each party has two children from their first marriages. The plaintiff's children who live with their mother are presently 15 and 17 years old and the defendant's children are 19 and 20 years old.
Neither spouse is a recipient of public assistance, all statutory stays have expired, and the court has jurisdiction. The court finds all the allegations of the complaint proven and that the marriage has broken down irretrievably.
The husband is 39 years of age, in good health, and is the owner of his consulting company, Systems Staffing Alternatives, Inc. When the husband first met his wife in 1985 they were both employees at Aetna Life and Casualty. At that time they were both divorced, he lived in Clinton, Ct. and she lived in Ellington, Ct. In the summer of 1985 they decided to live together and the plaintiff moved into the apartment that the defendant resided in which was owned by the defendant's uncle. From the summer of 1985 through December of 1987 they maintained separate checking accounts, however the defendant contributed more to the joint living expenses than the plaintiff due to the fact that he was paying child support from a previous marriage and had debts that required repayment. At this point in the relationship both the plaintiff and defendant were earning approximately the same amount of money from the Aetna and had the same position. The defendant was unaware at the time the plaintiff moved in with her that his divorce had only recently occurred and she testified that her decision may have been different if she had known. It was only after they were married that she inadvertently CT Page 3279 discovered this fact.
In 1985 the defendant applied for and received approval for a Connecticut Housing Finance Authority mortgage and in early 1986 the defendant acquired in her name a house at 9 Westland Road, Ellington, Connecticut. The purchase price of the home was $72,000 of which $64,200 was by way of a CHFA guaranteed mortgage through Heritage Savings and Loan, Inc. The deposit of $10,000 was supplied by way of a gift from the defendant's mother. The Westland Road home was purchased from Arlene Rice, the defendant's mother.
In April of 1987, prior to the marriage, the defendant refinanced the house and the plaintiff's name was added to the title to the home. At the time of the refinance the gift of $10,000 from Arlene Rice was returned, credit card debt in the amount of $2,285.29 was repaid and a loan from South Windsor Bank and Trust in the amount of $2,085.66 was paid.
Throughout this period the plaintiff and defendant worked on repairing the premises as it was in need of repair and much of the effort involved "sweat equity."
From the time the plaintiff and defendant met to shortly before the marriage, the plaintiff left the Aetna and worked for other local insurance companies in the same field. After acquiring this experience, the plaintiff, shortly before marrying the defendant, decided to leave his employment status and to become a private consultant as he felt the opportunities were greater.
At the time of the marriage in August of 1987 the plaintiff and defendant had been living together for approximately two years during which time the defendant's two children resided with them. The plaintiff's children were approximately eight and ten years old at the time of the marriage.
Shortly after the marriage the plaintiff and the defendant commingled their funds and kept joint bank accounts. The bills were generally paid by the defendant.
As the marriage progressed the defendant's children became a source of irritation to the plaintiff which resulted in disputes that grew into arguments as to how to discipline and otherwise raise the defendant's children. It is unnecessary for the court CT Page 3280 to reiterate the details of these disputes as the record is complete with examples. The plaintiff testified that these differences of opinion on how to raise the children was the source of the irretrievable breakdown of the marriage. He further testified that the defendant was a good wife, kept a good house, worked a full time job, and was a good "step-mother" to his children, when they visited on weekends. The defendant also paid the bills and maintained the financial records for the family and, for a period of time, for the consulting business. Thus the only source of difficulty, as he saw it, was the philosophical difference in raising the defendant's children. In 1992 he advised his wife that these difficulties were problematic for the marriage. At that time he sought legal advice concerning a divorce.
In 1992 the defendant decided that saving her marriage would require her to again accede to the plaintiff's demands and she decided to assuage the plaintiff by giving him an ever increasing voice in disciplining her children. The results of the discipline were counterproductive as the defendant's son's conduct grew worse over the balance of the marriage. In the late fall of 1994 the defendant's son moved out of the marital residence to live with his natural father. This was an attempt by all involved to remedy the rift which had developed between the plaintiff and defendant's son.
In 1992 the plaintiff and defendant sold the Westland Road home and purchased a new home on Pinnacle Road in Ellington, Ct. This transaction would seem to make sense only if both parties felt reasonably sure of their commitment to the marriage. Extensive refurbishing of this house and grounds was financed through credit card debt and cash outlays.
In June of 1993 the plaintiff was involved on a project for the State of Connecticut which required him to work with employees of the Department of Labor. In December of 1993 an employee of the Department, Maria Rosario, was assigned to work with the plaintiff. From 1992 to 1995 Ms. Rosario was experiencing her own marital problems until she left her husband in May of 1995. During the time frame from 1993 to 1995, Ms. Rosario and the plaintiff's work relationship developed into a personal friendship until it eventually developed into a romantic interest. The plaintiff claims that it wasn't until post-separation that he became romantically involved; the defendant claims it was earlier. CT Page 3281
The evidence supports, and the court so finds, that the greater share of the responsibility for the breakdown of this marriage lies with the plaintiff. His domineering conduct with regards to his wife and to her children and his inability to compromise his philosophy of child-rearing, even taking into consideration that he was not the natural father, clearly laid the ground work for the breakdown of the marriage. The developing relationship with Ms. Rosario was also a contributing factor to the decision by the plaintiff to seek a dissolution. The plaintiff and defendant also lived from paycheck to paycheck although the record demonstrates that the plaintiff was clearly the more self-indulgent of the parties. This did not however have a significant impact on the marital relationship.
The court finds that the present net income of the plaintiff after reasonable adjustments for certain fringe benefits and child support for the child of his previous marriage is $1100 per week. The court also finds that the net income of the defendant is $550 per week. The Pinnacle Road, Ellington, Connecticut is presently under foreclosure and the testimony leads the court to find that there is little or no equity and may in fact result in a deficiency judgment. The court further finds that the reasonable present value of the defendant's Incentive Savings Plan from the Aetna and Travelers is $34,500. The personal property accumulated by the parties jointly and having an original value of over $500 is scheduled in plaintiff's Exhibit I and defendant's Exhibit II.
The court enters the following orders after carefully considering all of the criteria set forth in CSG § 46b-81 and §46b-82:
1. Judgment enters dissolving the marriage.
2. Title to the property located at 41 Pinnacle Road, Ellington, CT. shall remain vested in both parties with both parties to share equally in the losses, gains, and tax implications resulting from the foreclosure that is presently pending or private sale. The parties shall cooperate with each other in attempting to sell the premises. As between the parties, exclusive possession is granted to the defendant until such time as the foreclosure is complete or a private sale has occurred. Both parties shall cooperate in the process of sale and/or foreclosure. CT Page 3282
3. Except for items specifically covered by these orders the parties shall attempt to divide the personalty scheduled in their respective exhibits in an equitable fashion. The court shall retain jurisdiction in the event the parties are unable to do so.
4. The 1996 Infinity and 1993 Honda motorcycle are assigned to the plaintiff.
5. The defendant's interest in her Investment Savings Plan and the Aetna shall be assigned to her free of any interest of the plaintiff.
6. The defendant shall be solely responsible for all loans, IRS debt, credit card debt and college expenses set forth on Schedule B of her financial statement. The defendant will hold the plaintiff harmless on these obligations.
7. The plaintiff shall be responsible for those credit card and other debts set forth on his financial affidavit and shall hold the defendant harmless on these obligations.
8. The plaintiff shall pay the defendant the sum of $300 per week as alimony for a period of three years. This alimony obligation is intended as separate maintenance, and said obligation shall not affected by any discharge in bankruptcy. No other alimony award is made. Said alimony obligation shall terminate upon death, cohabitation, or remarriage of the defendant.
9. The plaintiff shall maintain a policy of insurance on his life in an amount sufficient to cover his alimony obligation. The defendant shall be named as irrevocable beneficiary during the term of and in the amount of the alimony obligation, to the extent of that obligation.
10. The defendant's birth name is restored.
11. Each party shall be responsible for their own counsel fees.
12. Counsel for the plaintiff shall file a judgment file within thirty days of the date of this decision.
13. Plaintiff's counsel shall prepare a judgment file within thirty days of this decision and both counsel shall sign the judgment file.
SO ORDERED, CT Page 3283
Zarella, J.